I'd like to reserve, if I may, seven minutes for my rebuttal. Certainly. Your Honor, there are three points I would like to emphasize today. First, the point which will occupy, I suspect, most of our time, a standard of review for this case. The district court vacated the arbitration decision based upon an implausibility standard of review. That standard is not a permissible basis for vacating an arbitration decision under the Federal Arbitration Act at Section 10b. Second, even had the court applied the proper standard of review, completely irrational or manifest disregard of the law, the court still applied the improper analysis of attempting to ascertain whether or not the safe drinking water laws in Oregon are environmental laws as a matter of legislative history. The question, Your Honor, is not what is the legislative intent of the law. The question is what is the intent of the parties. And by asking the wrong question, the district court came up with the wrong answer. Third, Your Honor, even had the district court applied the proper analysis, there was no record upon which it could ascertain a basis under the Federal Arbitration Act to reverse the arbitration or vacate the arbitration decision. Your Honor, with those three points in mind, I would like to go ahead and begin talking about standard of review. I have a question that I'd like for you to address. Do you agree or disagree with the proposition that an arbitrator's decision can be so completely wrong that it no longer draws from the contract and therefore is more than merely wrong but is unenforceable? For example, if there's a contract to ship barley and the arbitrator says nobody in their right mind wants to grow barley, I think I'll make oaths, is that an enforceable decision or not? And if it is not, where do we draw the line? I think this court at Curacao gives us the answer to that question. The en banc decision clearly sets forth what are the standards under the Federal Arbitration Act for vacating an arbitration decision. These standards arise from Section 10d, when an arbitrator exceeds their powers, which the Ninth Circuit has interpreted to mean a decision which is completely irrational or one which is a manifest disregard of the law. The two standards, completely irrational or manifest disregard of the law, have repeatedly been held to be an exceptionally high standard. In fact, Your Honor, I can find no case in the Ninth Circuit where these standards have been applied in a situation such as this for a district court judge to second-guess the decision of an arbitrator. So if I understand you correctly, your answer is yes, it can be so wrong that it's completely irrational, and that is a basis, but you don't think it's met here. Is that a fair summary? That is correct, Your Honor. I think there are two standards for vacating an arbitration decision in the Ninth Circuit under Section 10d of the Federal Arbitration Act. The decision can be so completely irrational or it can be a manifest disregard of the law. Both of those standards are much different than the implausibility standard applied by the district court. Implausibility, Your Honor, my understanding of implausibility, is difficult to believe. The standard of completely irrational, I have found no case holding an arbitration decision to be completely irrational. In fact, the repeated decisions of the Supreme Court and of this Court have established that even serious errors of law are not sufficient to vacate an arbitration decision. And at that level, Your Honor, the standard of a decision being implausible or difficult to believe, even decisions which are wrong on the law cannot be vacated by a district court. There has to be a manifest disregard of the law. My understanding of that is the emphasis is on the term manifest, that an arbitrator must know what the law is and deliberately refuse to apply that law to the decision before him or her or to the arbitration panel. Because the implausibility standard is contradictory not only to this Court's decision in Caracera, but also to the standards in the Federal Arbitration Act, it was wrongly applied. Well, the district court purported to be applying our standards. So what do we review, his decision to no-foam or? Forgive me, Your Honor, I didn't hear the question. The district court decided this case, citing the same case as you're citing to us now. So it thought it was doing the right thing. And so what is our standard overview of the district court's interpretation? This Court would apply, I believe, a de novo review to the district court's decision about which law to apply. But, again, in November of 2004, when we were last before this Court, this Court's remand order was unequivocal. It said Caracera controls this case, and Caracera clearly sets forth the two standards of review, completely irrational or manifest disregard of the law. The district court, in fact, considered those two standards of review and explicitly selected a third, which does not appear in Caracera, which is not sanctioned by the Ninth Circuit, which has never been held in any case to be a basis under the Federal Arbitration Act to vacate an arbitration decision. And that's the implausibility standard. So the application of the standard was not only not in compliance with the Federal Arbitration Act and not supported by any case in the Ninth Circuit, but it was a direct violation of this Court's remand order and a disobedience of what the Court ordered the district court to do on remand. Your Honor, other than applying the incorrect standard of review, the second point which I'd like to discuss is the characterization of the arbitration decision. The district court goes to great lengths to talk about whether or not the Safe Drinking Water Act is an environmental law or not. The missing link is twofold. First, what the arbitrator found was, as far as the least is concerned, that the Oregon Drinking Water Act was not an applicable environmental law. In order to come to that conclusion, the arbitrator had to consider the entire arbitration record in front of him. That determination regarding the intent of the parties is a mixed question of law and fact, but still a question which is only ascertainable from a fact finder who's confronted with the entire record. So, the analysis of the district court to look at the characterization of what is an environmental law or what is not an environmental law misses the point entirely. The question is not what the legislature intends. The question is, in the context of this lease, what did the parties intend the term to mean? The arbitrator was straightforward and explicit that his determination was in the context of the lease, and the statement he made was, as far as the lease is concerned, the Drinking Water Act was not the type of law that was intended to fall on the indemnity provisions of the lease. There is a second provision which supports the other. How does that make sense, though? It makes sense. Why isn't the term environmental law a term of common sense, and therefore, unless there's some definition in the lease that excludes it, that it would be covered? There's two reasons, Your Honor. First, the context of the lease is how you have to look at how the parties intended the indemnity term to be applied. But putting that aside to answer your question, the Safe Drinking Water Act in Oregon is not administered by the Oregon agencies responsible to protect the environment. And if you think about protection laws... But you just said it doesn't make any difference what the legislature intended. It does not. You were asking what the parties intended, and my question to you was, in the common ordinary language in which people talk to each other and write contracts, why wouldn't this be an environmental law unless the contract explicitly excluded it? There's two reasons, Your Honor. One is there's many other terms of the contract, of the lease, other than these three words. Even these three words appear in a context to the extent that the tenant is in compliance with environmental law to the other negotiations between the relationship of the parties. The lease itself provides there's a term of quiet enjoyment, but the landlord in its attempt to voice its problems on a tenant that had nothing to do with those problems has run afoul of other provisions of the document. In short, this Court has held that contracts have to be read together in their totality. I'm sorry. I know you were answering, but it doesn't make sense to me what you're saying. What is it specifically about the lease? You were telling me context, context, context. What specifically in the lease makes it possible to read environmental laws as not including clean water law? Your Honor. What is it specifically about the contract that makes that? There is a context to the lease, which is my third point, which that record is not before you. And so for you to reverse on that ground, you lack the record to be placed before you could do so. Hall Street did not appeal to that context. Counsel, I'm really having difficulty. You're telling me look at the context of the lease, and then I'm asking you specifically what that context is, and now you're talking about the record. I just want to understand your view of the provisions of the lease, and what is it in the lease that makes environmental laws not encompass the clean water law? Forgive me, Your Honor. To answer your question, I have to proceed in sort of a stepwise analysis, and I think there are three steps to answer your question. The first question is your standard of review, your ability to look behind what the arbitrator did and review those findings. And this is my third point. That record to answer your question is not before this Court. You don't have a record to weigh whether the arbitrator's view of what's in environmental law was right or whether it was wrong. The second step of this analysis is the context in which the parties negotiated the lease, and that requires looking at all of the lease terms together. Recall that it's not just an environmental law. It's an applicable environmental law, and applicable to the extent that the tenant is in compliance with the law. Those words give the words environmental law context in this sense, that it's not just any environmental law that would cause the indemnity provision to be called upon. It would have to be an environmental law that had some application to the claim for which indemnity is sought. This prevents the implausible result of having a tenant incorrectly fill out a permit for air emissions at the facility, only to be held responsible for groundwater contamination on a neighbor's property. It's too attenuated, and within the context of the lease, it would eliminate the words to the extent the tenant was in compliance with environmental law. It would just be if the tenants are in compliance with all environmental law, and that's just not what the lease says. The person in the best position to assess the context and the meaning of the lease was the arbitrator, because the arbitrator is the only fact finder that heard all the evidence. The district court never did. The third step of this analysis, Your Honor, and I put this in as an aside, is that there is a continuum of environmental laws. On one side are laws which are clearly to protect the environment. The Clean Air Act and the Clean Water Act regulate pollutants that are emitted in our industrial society to contaminate the environment. On the other side of that continuum are laws which protect consumers and workers. The Occupational Safety and Health Act, the Food and Drug Administration, those types of laws protect a person or a worker from ingestion or breathing or other types of contaminants. Well, isn't that getting pretty far afield from what an arbitrator does? This is a lease that some form of which had existed for a long time. The rights of the plaintiffs apparently are derived from the lease. When the arbitrator interprets language in the lease, he's doing what arbitrators do all the time in commercial leases. Yes, Your Honor. And we learned in Alternative Dispute Resolution 101 that it's none of our business what the arbitrator thinks the lease meant, as long as he's within the general terms of the document. That's exactly true. So what do we care about the legislative intent on having clean drinking water? You should not care, Your Honor. In this case, you're looking at arbitration forward. You're absolutely correct. The court's inquiry into the arbitration decision stops exactly as the court suggests it should. But I was merely trying to do — through this transaction with Viewmaster and on down to when Eiler bought the property in 1984. And Eiler's rights are derived from that lease. It's the same lease? No, Your Honor. GAF and Sawyers owned the property. They were not tenants on the property. They could do as they pleased with that property. Within their rights as the owners of the property. And all of the contamination that issued in today's case occurred during that time period. And all of it had already happened, most of it, by 1984, hadn't it? Yes, Your Honor. It happened 20 years before Mattel was present on the site. What we're talking about is going back to see who assumed what risk under this lease. No, Your Honor. I don't think we're looking at the assignment of risk or the allocation of risk. I think that this lease provision that is subject to our discussion today, the arbitrator found, and based upon all the evidence which he reviewed, that this provision was never intended to apply to this type of situation. The idea that there was explicit risk allocation. Usually these leases, commercial leases of any property that's going to be used for an industrial purpose usually have state harmless agreements. So the landowner usually tries to protect itself against having a negative land value when he gets his land back at the end of the lease. That's true, Your Honor. But even with the type of lease where the landlord is absent from the property, the landlord still has duties and responsibilities. This court has held that a landlord, even where the tenant has taken on the responsibility for maintenance and upkeep, has a duty at the time of lease formation to inspect the property and to make reasonable efforts to ensure that the property is suitable for its intended use. The landlord cannot avoid its obligations at the time of lease signing to provide a property that meets those criteria. And, in fact, this lease has an explicit covenant and warranty from the landlord in Section 33 that the property is suitable for its use and that the tenant will have quiet enjoyment of the property. So this is a situation where the landlord attempts to hoist the defects of the property that preexisted its own ownership onto a tenant that had nothing to do with those problems. Never used the chemical. Didn't cause the damage. Has no responsibility. It's only through this twisted view of the lease that the landlord can make this claim. The arbitrator correctly saw through that and said that is not the purpose of this indemnity provision, to take these words out of context, out of the testimony that I heard, and to apply it in this fashion. Your Honor, my third point about the record that's before the Court. Forgive me. On my second point, the district court's decision focuses on a conclusion of law, which is Conclusion of Law No. 7. There's also Conclusion of Law No. 5, that Mattel and its predecessors did not use TCE, and their actions have not been shown to have resulted in additional TCE contamination. Their failure to test for or otherwise discover the TCE is not within the meaning of this term applicable environmental law as it's used in the lease. By ignoring this basis for the district court's, for the arbitrator's decision, the district court again misses part of the analysis which supports this finding. Your Honor, I want to talk just a little bit about waivers. You have 20 seconds. I'll do it fast, Your Honor. Sure. First, in the district court on remand, only one argument is raised by Hall Street, that the arbitrator's determination was implausible. Hall Street made no argument under the correct basis of the Federal Arbitration Act that the decision was completely irrational or a manifest disregard of the law. So Hall Street has waived any challenge it has because that argument was not presented to the district court. In addition, Hall Street did not lodge the arbitral record before the district court and, again, waived any challenge it has to the fact-finding that was done in the arbitration. For these reasons, Your Honor, I think that the district court has committed error. Thank you, counsel. May it please the Court, Michael Garone from Schwabie, Williamson & Wyatt, representing the plaintiff and the appellee in this case, Hall Street. In a case where the well water at an industrial plant that is consumed and used by workers at that plant is contaminated with hazardous waste, the arbitrator's conclusion that the Oregon Drinking Water Quality Act is not an applicable environmental law is both implausible and completely irrational. At the outset, I would ---- The district court didn't find it was completely irrational. It found it was implausible. True. But, Your Honor, you can affirm the district court on any legitimate basis or a legitimate ground. And if you were to find that his decision could be alternatively supported under the completely irrational standard, you can affirm the district court's opinion on that basis. I don't think ---- First of all, I don't agree that we didn't raise all of the issues that we had at our disposal under the FAA in this case. But even if we didn't, you can affirm on any legitimate grounds that would bolster his work. Professor said you didn't argue that it was irrational in the district court, only that it was implausible. Do you agree with that? Your Honor, I have to review our brief. But I believe that we urged any legitimate grounds under the FAA. I have to take a look at our brief. And to be honest with you, I just don't recall right now whether we argued that. But I believe that we argued all legitimate grounds under the FAA. But I don't think it would really matter because as long as there is a legitimate basis for his opinion under the standards of the FAA, that the trial court may have applied a standard that this court disagrees with, I don't think is of any consequence. I don't think it's a waiver situation. We won in the district court. Well, we sent him back once because he applied the wrong standard. And then he applies another wrong standard. Is this the second time we should affirm? And if we should affirm, even though he applied the wrong standard, why wouldn't we have done that the first time? Well, Your Honor, if he was right for the wrong reason this time, then I think you should just affirm. But then wouldn't he have been right the first time also? That's possible. The panel then apparently didn't. Well, there had to be. I mean, it's the same award. I agree, Your Honor. I think he was right. So you're saying that we made a mistake in not affirming the first time. I think that's true. I don't think that was the focus of the panel the last time. I think the focus was on the Caisera decision and whether the Caisera decision applied to these rather unusual circumstances where the parties did not have an underlying arbitration agreement and only agreed to arbitrate once they got to court. Our public counsel makes much of the absence of a factual record. Are you quarreling with any of the factual findings of the arbitration award? Well, Your Honor, first I would point out that the factual record is in the clerk's record. It can be found at Clerk's Record 130 to 140. The transcript of the hearing before the arbitrator and all the exhibits that were submitted during the arbitration are in the court's record if you look at the excerpt. So there is a record. You're saying that they're just wrong, but there is, in fact. Their whole record is here. The record has been lodged in the district court and is available for your review. However, Your Honor, we did not attack the factual findings of the arbitrator in this case. The factual findings that the arbitrator made are, for the most part, undisputed. Everybody agrees that Hall Street did not test the water for a period of many years in violation of the Oregon Drinking Water Quality Act. The only real issue here is whether the Oregon Drinking Water Quality Act is an applicable environmental law, and that conclusion was made by the arbitrator without any reference to the intent of the parties, without any reference to the practices of the parties, without any references to the context of the lease, but solely based upon his reading, which he plucked out of thin air, as to what that word means. And I think the district court properly recognized that the arbitrator's decision was not grounded or tethered to anything in the actual lease agreement between the parties, and that's why the conclusion was an irrational or implausible conclusion. One of the questions you asked earlier was, how wrong does it have to be in order for this Court to not confirm an award? And I would submit when an arbitral decision is not based upon anything in the contract, is not based on any facts, and is just based on the arbitrator's own notion of what draws its essence from the contract. And I think that's what the completely irrational standard means. It has to have some grounding in the contract. I would point out, though, that I disagree that this Court has not recognized the implausibility standard, because the Theis case specifically states that implausibility of an arbitral award. Well, that wasn't a case involving plausibility. It was a case where, before they got to the issue, they set forth what they thought were the general rules. There was in no way a holding in that case. One might say a gratuitous misstatement of the law. Well, Your Honor, I would submit that, although you could quarrel with it being dicta or whether it was part of a holding, I would submit that it's based upon other authority from the court, the Wausau case and the whole line of cases that I cited, where the court, this Court has basically stated the standard in terms of whether the arbitrator's rationale was plausible. And I would submit that the plausibility standard may not be all that different from the completely irrational standard, frankly. There isn't a lot of case law which defines either way. Well, if something is rational, presumably it's also plausible. True. And if it's irrational, I guess it isn't. Are you familiar with the page 10 of the judge's opinion and order? After setting out at the bottom of page 9 and the top of page 10 pretty much the standard correct statement of the duty of an arbitrator, he said, My task is, therefore, to determine whether the arbitrator's interpretation of the phrase applicable environmental laws is plausible, was plausible. And then he said, I conclude that it was not. Now, my question for you is, where does he get that idea that that's what his task is after he had just recited what the task really is? Well, Your Honor, he got it from the Theis case and he got it from the Wausau case, which both provide support for the notion that an implausible construction of a contract is grounds for vacant. And again, whether you agree with him or not, It's implausible in the eye of what we hold. In the eye of the reviewing court, Your Honor. Do you think implausible and irrational are the same thing? Your Honor, after reading the cases and finding that there is really no firm guidance, I would argue that they are, in essence, the same thing. Completely irrational, there is an 8th Circuit case, a cardinal case that I cited in my brief, which basically says that the completely irrational standard is akin to the standard that courts have applied in the collective bargaining context, where they state that an award that does not draw its essence from the collective bargaining agreement can be vacated. And I think there is some authority for the notion that a completely irrational decision is simply a decision that is not tethered in any manner or grounded in any manner on anything in the lease agreement or in the agreement between parties. And so I would urge that you look — that you give some meaning to what a completely irrational standard is, give some meaning to this Court's prior statements concerning implausibility, because we may say that they're dicta, but they're nonetheless there in the Court's decisions. And I would submit that — Well, if we mention one, that's the one since Caiusera. Right. Where the issue had nothing to do with irrationality or implausibility. It had to do with what fraud or corruption or conflict of interest. And in deciding the question of whether there was — whether the award should be vacated for corruption, fraud, or undue means, that was the issue. And before getting to that issue, as I said, there was a gratuitous statement of what they thought that the general law was, apparently without having read Caiusera very carefully. Well, I would submit, Your Honor, that it really makes little difference. And I think the reason it doesn't make any difference is, under either standard, this arbitration decision does not pass muster. And I'd like to go through some of the points to show you why it doesn't pass muster. Number one, Your Honor, Sections 12b and 13a of the lease unambiguously imposed broad indemnification requirements on Mattel for the use or presence of hazardous waste on the premises, even if caused prior to the date of the lease. The reason for this was that Mattel's predecessors had been operating on this property for many, many years and were in a unique position to know what activities had occurred on the property, what chemicals had been used, and what the condition of the property was. For that reason, this broad indemnity provision was put into the lease. Now, both the arbitrator and the judge agree that there is a very broad indemnity provision, and it's not limited just to what was caused by Mattel. Counsel is going to try — has tried to convince you that if it wasn't caused by Mattel, they don't have to indemnify for it. And the lease is clear and unambiguous that that's not the case. Now, there are exceptions to this indemnity provision, and the exception has two parts, not just one part. The exception is under 12c and 13a of the lease, and it states that Mattel must establish two prongs. One, that it did not cause directly or indirectly the presence of the hazardous So, just by that language, it is recognized that even if they didn't cause the presence of the waste, they can be responsible for its presence and responsible for indemnification of Hall Street if they are not in compliance with applicable environmental laws. Now, that was accepted by everybody, the arbitrator and the judge. Other things that were accepted by everybody in this case is that the Oregon Drinking Water Quality Act is an environmental law. In fact, Judge Jones, in his decision, cites the fact that in one of Mattel's briefs, they described this law as an environmental law. So, this focus today on it not being an environmental law, I think, is a little bit too late. It is clearly an environmental law. It's meant to protect groundwater from contamination so that that groundwater will not be used in drinking water. Now, it's also uncontradicted that Mattel and its predecessors, for a period of about 20 years, did not test this groundwater. And it subjected itself to serious and significant liability under the Oregon Act for not doing that. Did the landowner have any right to inspect its own wells on its land? They sent the SECOR out to get the inspection in 1998. Absolutely, Your Honor. It was about 20 years late doing that. Your Honor, the landowner also had an obligation to test, but so did the tenant, the operator. Why couldn't the arbitrator decide that they both had a duty to test under the environmental laws and let the tail follow the hide on this? Well, that would be an example of dispensing your own brand of justice that wouldn't be grounded in the lease agreement. There's nothing in the lease that makes Hall Street's failure to test a relevant consideration for the purposes of the indemnification clause. The only relevant criteria under this lease is whether the tenant complied with all applicable laws, and it's uncontradicted that they didn't. They conceded it. Mr. Schau conceded it. He wasn't proud of it, but they didn't test. They were the ones operating the well. They were the ones, you know, using the water for their employees to drink and to wash with, et cetera. We were just the landlord under a triple-net lease, had very little attachment to the property other than that. So, Your Honor, it's clear that they violated an environmental law. The only issue is whether it's an applicable law or not. That's where the arbitrator fell down on the job, and that's where his decision is completely irrational and or implausible, doesn't matter which. The arbitrator concluded that the Oregon Drinking Water Act was not an applicable environmental law, and he concluded that Mattel complied with all applicable environmental laws with respect to TCE, which is ridiculous. They did not comply with all environmental laws with respect to TCE because they didn't test the groundwater for the presence of that contamination. In addition, he found that the Oregon Drinking Water Quality Act was inapplicable because it was not, and I want to quote this section because I think it's important, he said it was not designed to protect landowners from having their property protected from environmental contamination. This is nonsensical reasoning, and the district court properly held that it was nonsensical reasoning. No environmental law has that purpose, and no environmental law could pass that test. Environmental laws are intended to protect public health and the natural environment. They are not intended to protect landowners from having their property protected from environmental contamination. So, the central thesis of the arbitration award is irrational without any basis. The district court properly found that there was nothing in the lease agreement that justified the arbitrator's conclusion. The district court properly found that the term applicable environmental law was a common sense meaning, like the meaning of barley, and says that barley should be considered wheat. Just because the arbitrator says so, that goes beyond what an arbitrator is allowed to do, and that goes beyond the pale, and therefore you do not have to confirm that award. That's what the arbitrator did here. If you look at his language in his award, he doesn't reference the party's claim to conduct or the party's practices. He just says applicable environmental law means something designed to protect the landowner from property damage. And it doesn't mean these other things. It's completely untethered to anything in the lease agreement. Let me ask you a question that I don't think has been asked yet, and that is, you're familiar with the doctrine of the law of the case? Yes, Your Honor. And Judge Reinhart. Unfortunately, in this matter. Judge Reinhart raised a question about when this case was here before, the same or very close to the same question was presented. The district judge's award or upsetting of the award was challenged again, and in that case, when we sent it back, we held there was a limited scope of review, and we set it up what it was. Now, why isn't that the law of the case? Well, Your Honor, you directed the trial judge to examine the arbitration award, the first arbitration award, in light of the FAA standards, and that is what the district court did. Now. As I understand it, the first time, the court had applied a standard of review that purported to derive from the contract itself, and that was the issue in Cayacera. Can the parties contractually change the FAA standard of review to be more like a district court, you know, conclusions of law for de novo and substantial evidence? And Cayacera said, no, the parties can't have a contractual standard. It's the FAA standard. So the first time, isn't that what the district judge did here, just went by what the parties had said and this time had to go back to the statutory standard? Yes, Your Honor. But we didn't apply the right standard. We told him to apply the right standard. Right. And if he didn't apply the right standard this time, why do we now apply it ourselves and we didn't do it last time? Well, Your Honor, you could remand it back to the district court judge and ask the district court judge to review the matter under the completely irrational standard or the manifest disregard of the law standard. That's an option for this Court. But I think that you can take the other way out, which is to merely affirm on the basis of another legitimate ground. You see, we really have an option at this point. We could say several things. One, we could say, you didn't apply the right standard again. Now try one more time. Or we could say you did apply the right standard. Or we could say you didn't apply the right standard and now we're going to apply the right standard and could rule either way. That's correct. I agree with everything you just said, Your Honor. Four options. Four options. Some of which are a little bit better for my side than others. Your Honor, we would submit that the completely irrational standard is similar to the standard that has been utilized in courts in cases arising out of labor law, traditional labor law, which would be if it fails to draw its essence from some language in the agreement, then it's completely irrational or implausible. The Court is not to confirm an arbitration award which is legally irreconcilable with the undisputed facts. And I think in this case, it's clear that the Drinking Water Act applied to Mattel. It's clear that they violated it. It's clear that it has relevance to this particular property. Counsel, you know, raises this specter of an air permit not being related to the property. Well, this issue here is related to the property. It's intimately related to it with regards to the drinking water. This is a wrong decision from the arbitrator. It's not just a little bit wrong under the de novo standard. It's very wrong. And under either the implausibility or the completely irrational standard, I would ask you to confirm the trial judge's decision in this case. Unless there's any other questions. Thank you, counsel. Thank you. Thank you, Your Honor. I think this argument about the ---- Well, I think you're out of time, but we'll give you two minutes for a comment. Thank you, Your Honor. If that's the case, then a couple of quick notes. The record of the arbitration was not lodged by Hall Street at the time the district court issued its first decision. This is what the court's mandate directed the district court to do, to go back to the first arbitration decision and enter it as the judgment of the court unless grounds could be found under the Federal Arbitration Act to vacate or modify it. At the time of that first decision, there was no arbitration record lodged to the court. The arbitration record was lodged to the court later in the district court proceedings after the district court had remanded the case to the arbitrator and after the matter had come around again. But that's moot for our purposes today. So the order of this court set forth a standard review to apply, and it directed the district court to enter judgment for Mattel unless a ground could be found for its modification or vacatur. And the district court clearly did not find that ground. The inquiry of this court stops there. The original arbitration decision, there's no basis to modify it or vacate it under existing law, under the Ninth Circuit law, or under the mandate. And because of that, it should be entered as judgment of the court. Thank you, counsel. Case just argued will be submitted. Court will stand in recess for the afternoon.
judges: Goodwin, Reinhardt, Graber